# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| **DARRELL PRIDY, GREGORY NABORS, MICHAEL SANDERS, and RANDALL ABSTON,** on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. _____ |
| v. | ) ) | **CLASS ACTION** |
| **DUKE ENERGY CORPORATION,** | ) ) | **JURY DEMAND** |
| Defendant. | ) ) ) | |

## COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT (ERISA) AND THE TENNESSEE HUMAN RIGHTS ACT (THRA).

Plaintiffs Darrell Pridy, Gregory Nabors, Michael Sanders, and Randall Abston ("Named Participants" or "Plaintiffs") bring this complaint against Duke Energy Corporation ("Duke Energy," "Company" or "Defendant"). Named Participants bring their cause of action as a putative class action on behalf of themselves and all others similarly situated under Section 502(a), of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a), for wrongfully denying them accrued sick leave and short-term disability benefits, as well as under the Tennessee Human Rights Act ("THRA") for discrimination on the basis of age.

## PARTIES

1. Darrell Pridy is a citizen of the State of Tennessee and resident of Cheatham County. At all times relevant to this Complaint, Mr. Pridy has been employed by Duke Energy and/or its predecessors and has participated in various employee benefit plans, including a

1

welfare benefit plan for Duke Energy employees providing sick leave and short-term disability benefits. Mr. Pridy is over the age of forty.

2. Gregory Nabors is a citizen of the State of Tennessee and resident of Wilson County. At all times relevant to this Complaint, Mr. Nabors has been employed by Duke Energy and/or its predecessors and has participated in various employee benefit plans, including a welfare benefit plan for Duke Energy employees providing sick leave and short-term disability benefits. Mr. Nabors is over the age of forty.

3. Michael Sanders is a citizen of the State of Tennessee and resident of Robertson County. At all times relevant to this Complaint, Mr. Sanders has been employed by Duke Energy and/or its predecessors and has participated in various employee benefit plans, including a welfare benefit plan for Duke Energy employees providing sick leave and short-term disability benefits. Mr. Sanders is over the age of forty.

4. Randall Abston is a citizen of the State of Tennessee and resident of Davidson County. At all times relevant to this Complaint, Mr. Abston was employed by Duke Energy and/or its predecessors and participated in various employee benefit plans, including a welfare benefit plan for Duke Energy employees providing sick leave and short-term disability benefits. Mr. Abston is over the age of forty.

5. Duke Energy Corporation is a public Company incorporated in Delaware, which operates a subsidiary Company called Piedmont Natural Gas, which is registered to do business in the State of Tennessee. Its headquarters is in Charlotte, North Carolina. Duke Energy may be served through its registered agent, Corporation Trust Company, at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801.

## JURISDICTION

6. This Court has jurisdiction over Plaintiffs' claims pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Named Participants' claims under Tennessee law pursuant to 28 U.S.C. §1367.

7. Venue is proper pursuant to 29 U.S.C. § 1132(e)(2), as all parties are found in this district, Defendant's breach occurred in this district, Named Participants are employed in this district. Venue is also proper under 28 U.S.C. § 1391(a).

## FACTS

8. Duke Energy is one of the largest electric power holdings companies in the United States, providing electricity to 7.6 million retail customers in the United States. Duke Energy owns and operates numerous diverse power generation assets in North America. As of December 31, 2017, Duke Energy had operating revenues of $23.6 billion, owned assets of $138 billion, and employed 29,060 individuals.

9. Named Participants began their employment with the Company when it was Nashville Gas Company. Nashville Gas Company was acquired by and became a division of Piedmont Natural Gas Company, Inc. ("Piedmont Gas"). Piedmont Gas is an energy services Company whose principal business is the distribution of natural gas to more than 1 million residential, commercial and industrial customers, as well as power plants, in Tennessee, North Carolina, and South Carolina. On October 3, 2016, Duke Energy acquired and became successor to Piedmont Gas, which is now a subsidiary of Duke Energy. As successor to Piedmont Gas, it is obligated and bound by the applicable collective bargaining agreements described below.

10. Mr. Pridy began his employment with the Company in 1984.

11. Mr. Nabors began his employment with the Company in 1993.

12. Mr. Sanders began his employment with the Company in 1987.

13. Mr. Abston began his employment with the Company in 1979 and retired from employment in August 2018.

14. At all times during their employment, Named Participants were members of Local Union 702 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry, AFL-CIO ("Local 702") and were represented by Local 702 in collective bargaining.

15. At all times during their employment, Defendant was and continues to be a party to a collective bargaining agreement with Local 702.

16. The collective bargaining agreements over the years have created or incorporated a number of employee benefit plans.

17. One such benefit is a sick leave and short-term disability benefit. Upon information and belief, the collective bargaining agreement in effect from 1989 to 1992 ("1989 CBA") between the Company and Local 702 established a sick leave and short-term disability benefit plan ("Plan"), which Plan is governed by Section X of the same document. Section X of the 1989 CBA is attached here as **Exhibit A**. Section X of Exhibit A and successive collective bargaining agreements are the governing Plan documents.

18. The Plan allowed a participant to accrue sick leave days as they worked for the Company and bank those accumulated days. The 1989 CBA refers to this accrued leave account as a "sickness allowance." Upon information and belief, employees participating in the Plan actively accrued sick leave time until December 31, 2004.

19. The collective bargaining agreement between the Company and Local 702 in effect from August 1999 to August 2004 ("1999 CBA") is the last agreement to provide for

4

accrual of banked Plan hours, which is also contained in Section X. Section X of the 1999 CBA is attached here as **<u>Exhibit B</u>**. Subsequent collective bargaining agreements refer to individual accrued benefit accounts as the "Leave Bank."

20. The Plan details eligibility requirements for benefits, calculation of benefits, claims for benefits, and administration of the Leave Bank. It requires the Company to administer the accrual of benefits in the Leave Bank using Company payroll and leave records. Exhibit B, Section X(k).

21. Use of Plan benefits was limited to certain types of illnesses and situations. For example, the Plan document delineates how many hours of sick leave can be used for scheduled medical appointments, how many hours can be used for illnesses and injuries, and how many can be used in the case of an "emergency illness" of a close family member.

22. The Plan document gave the Company substantial discretion to make claims determinations. For example, it gives the Company, as administrator, the discretion to "require employees to furnish a certificate from a doctor designated by the Company and other evidence of disability satisfactory to the Company." Exhibit B, Section X(e).

23. The Plan document also rewarded participants who did not utilize accrued sick or disability leave in a calendar year. Exhibit B, Section X(i), (j).

24. As of December 31, 2004, the Company amended the Plan to eliminate the accumulation of hours in Leave Banks going forward. However, the Company allowed participants with hours already accrued in their Leave Banks to continue to carry over and use that time as described in the collective bargaining agreement between the Company and Local 702 effective August 2004 through August 2008 ("2004 CBA"). In other words, the Company recognized the Leave Banks as accrued benefits that could not be cut back or reduced.

25. Article X, Sick Leave/Short-term Disability, of the 2004 CBA provides in relevant part (emphasis added):

> Employees are credited with 12 days of sick leave each January 1 to be taken as needed for any period of illness during the calendar year. They may also use any *accrued* sick days in their Leave Bank (sick leave earned before January 1, 2005) when all of their annual sick days have been used or for a certified FMLA Leave to care for an immediate family member. Banked days may also be used to cover the waiting period before short-term disability benefits begin.

26. The Company also recognized participants' accrued Leave Banks in both the collective bargaining agreement between the Company and Local 702 effective August 2008 through August 2012 ("2008 CBA") and the collective bargaining agreement between the Company and Local 702 effective August 2012 through August 2018 ("2012 CBA").

27. The Company administered and accounted for Named Participants' and similarly-situated persons' individual Leave Banks through an online portal called My Time, in which employees could log on and review their pay and benefits. This portal showed an individual's Leave Bank as a "sick reserve" and showed credits and debits in the account. The employee could also request to use those benefits through My Time.

28. Upon information and belief, in April 2018, the Company removed the "sick reserve" function from My Time and began refusing to honor the accrued time in Named Participants' and similarly situated employees' Leave Banks. Duke Energy gave Named Participants no notice of this action.

29. Plaintiff Abston requested to use time from his Leave Bank in late-April 2018, but was told by his supervisor that the Company no longer allowed employees to use those benefits.

30. As of the date Duke Energy removed the sick reserve from the online portal, Plaintiff Pridy had approximately 550 hours in his Leave Bank; Plaintiff Nabors had 993.50 hours; Plaintiff Abston had 953 hours, and Plaintiff Sanders had 974 hours in his Leave Bank.

31. During negotiations leading to the formation of a new collective bargaining agreement in mid-2018, Duke Energy and Local 702 did not bargain over sick leave and short-term disability benefits that were owed under prior collective bargaining agreements; instead, the Company unilaterally informed Local 702 that it would no longer honor accrued Leave Bank benefits in the new collective bargaining agreement, and unilaterally chose to deny accrued Leave Bank benefits to Named Participants and Class members.

32. It would be futile for Named Participants and Class members to attempt to exhaust their administrative remedies under the Plan, because the Plan does not provide for such an administrative mechanism.

33. Upon information and belief, 64 employees had accrued sick leave and short-term disability benefits in their Leave Banks when Defendant ceased honoring accrued Bank benefits in Spring 2018.

34. Upon information and belief, all employees who had accrued sick leave and short-term disability benefits in their Leave Banks when Defendant ceased honoring accrued Bank benefits in Spring 2018 were over the age of forty.

## CLASS ALLEGATIONS

35. Named Participants seek relief from the wrongdoing of Defendant for themselves and for all those individuals similarly situated through Rule 23 of the Federal Rules of Civil Procedure, on behalf of the following class:

> All non-management employees of Piedmont Natural Gas Company, Inc., d/b/a Duke Energy Corporation as of April 1, 2018 having non-zero balance Leave Bank accounts.

36. The putative classes meet the statutory prerequisites of Fed. R. Civ. P. 23(a), as set forth herein.

37. As of early 2018, the date that Defendant Duke Energy unilaterally terminated Leave Bank benefits, there were at least 64 employees with accrued Leave Bank time in their individual accounts. Members of the class are so numerous that joinder of all members would be impracticable.

38. The number and identity of putative class members is easily ascertainable through discovery. Any notice to class members could be given through the already-established channels Defendant uses to communicate with employees, retirees, and Local 702. Additionally, Defendant maintained records of individual Leave Bank accounts through which class members may also be easily identified.

39. Named Participants' claims are typical of the claims of the class, as Defendant's duties and liabilities to Named Participants are identical to their duties and liabilities to the class. Named Participants will fairly and adequately represent the interests of all class members, and they have retained counsel with competence and experience in class action, ERISA, and THRA litigation.

40. Named Participants' and class members' claims involve common questions of both law and fact. The facts relevant to this action relate simply to the relevant collective bargaining agreements, the bargaining of those agreements, the administration of the Plan, and ultimately the failure to honor Plan benefits accrued by the Named Participants and other class members. Additionally, all affected class members are long-term employees over the age of forty. The injuries sustained by Named Participants and all putative class members flow from a common nucleus of operative facts – Defendant's fiduciary and contractual failings, namely their failure to honor the Leave Bank benefits conferred on all class members, as well as Defendant's discriminatory treatment of the class as a whole, all of whom are over the age of forty.

Similarly, this action raises common questions of law regarding the rights and benefits due Named Participants and class members under the Plan and the CBAs, and the duties owed by Defendant to the class members as fiduciaries of the Plan and the execution of those duties.

41. Defendant's actions are uniform across the class. The Company was a party to several consecutive collective bargaining agreements which created the benefits and governed the Plan for all class members. Defendant then unilaterally decided not to honor any of the Leave Bank benefits accrued by class members under the prior collective bargaining agreements and recognized by subsequent collective bargaining agreements. Defendant took actions, as a fiduciary and a contracting party, that affected members of the classes uniformly. Therefore, all class members have sustained damages that are uniform in nature, in that all class members were deprived of vested and accrued Plan benefits.

42. Allowing these claims to proceed individually exposes Defendant to the risk of inconsistent judicial interpretations of the singular terms of the collective bargaining agreements at issue should two or more employees bring their claims simultaneously in different courts, thereby creating incompatible standards of conduct for Defendant. Individual litigation would also be duplicative, as Named Participants bring this suit to clarify and enforce their rights to accrued sick leave benefits under the terms of the Plan, or to obtain equitable relief to restore them to the position in which they would have been but for Defendant's violation of Plan terms and contractual obligations, and to enforce their rights under Tennessee laws prohibiting age discrimination.

43. Named Participants will fairly and adequately represent the Class and have retained counsel experienced and competent in the prosecution of ERISA class actions. Named Participants have no interests antagonistic to those of other members of the Class. Named

Participants are committed to the vigorous prosecution of this action and anticipate no difficulty in the management of this litigation as a class action.

44. This action may be properly certified under either subsection of Rule 23(b)(1). Class action status is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendant. Class action status is warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

45. In the alternative, certification under Rule 23(b)(2) is warranted because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

46. In the alternative, certification under Rule 23(b)(3) is warranted because the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## CAUSES OF ACTION

### COUNT I
**Clarification and Enforcement of Rights**
**(29 U.S.C. § 1132(a)(1)(B), (a)(3))**

47. Named Participants incorporate the allegations contained in paragraphs 1 through 46 into Count I as if fully re-alleged herein.

48. Plaintiffs Pridy, Nabors, Sanders and Abston bring this claim against Defendant on behalf of themselves and all putative Class members.

49. Defendant is an "employer" as that term is defined in Section 3 of ERISA, 29 U.S.C. § 1002(5).

50. Defendant's sick leave and short-term disability Plan is an ERISA-qualified welfare benefit plan as defined by 29 U.S.C. § 1002(1). It was established and maintained by Defendant for the purpose of providing benefits to participating employees in the event of sickness, accident or disability.

51. At all times relevant, Named Participants and putative Class members were "employees" of Defendant and "participants" of the Plan as those terms are defined in Section 3 of ERISA, 29 U.S.C. § 1002(6), (7).

52. Named Participants and Class members have nonforfeitable, accrued rights to banked sick and disability leave benefits by virtue of the terms of the governing Plan documents and the contractual commitment by the Company to provide and not reduce those benefits.

53. Defendant's refusal to provide vested and accrued Plan benefits in violation of the plain terms of the Plan constitutes a wrongful denial of benefits.

54. Named Participants bring this suit to clarify and enforce the rights of Class members to accrued benefits under the terms of the Plan, and to obtain equitable relief to restore them to the position in which they would have been but for Defendant's violation of Plan terms.

55. Defendant has made it administratively impossible for Named Participants or other Class members to file for Plan benefits, and thus Named Participants are deemed to have exhausted any and all administrative remedies under the Plan.

# COUNT II
## VIOLATIONS OF THE TENNESSEE HUMAN RIGHTS ACT
### (Tenn. Code Ann. § 4-21-401)

56. Named Participants incorporate the allegations contained in paragraphs 1 through 55 into Count II as if fully re-alleged herein.

57. Defendant is an employer, as defined by Tenn. Code Ann. § 4-21-102, and are otherwise covered by and subject to the provisions of the Tennessee Human Rights Act ("THRA").

58. Under the THRA, "[i]t is a discriminatory practice for an employer to ... discriminate against an individual with respect to compensation, terms, conditions or privileges of employment because of such individual's ... age." Tenn. Code Ann. § 4–21–401(a)(1).

59. Defendant controlled the terms of employment for Named Participants and the Class members during the relevant period, including employee benefits.

60. Named Participants and the Class members are, upon information and belief, all over the age of forty. In fact, they are the most senior employees of the Company in Nashville.

61. Named Participants and the Class members, as employees of Defendant, earned and were entitled to the benefits provided to them pursuant to the Plan.

62. Defendant violated Tenn. Code Ann. § 4-21-401 by discriminatorily eliminating employee benefits as to only its oldest employees. Defendant did not reduce sick or disability benefits for younger employees.

63. Age was a primary motivating factor in the Defendant's decision to eliminate sick and disability benefits for the Class, because the only employees affected by the Defendant's adverse employment action were, upon information and belief, over the age of forty, and who had the most seniority with Defendant.

64. Defendant was also motivated to eliminate Plan benefits for reasons related to age because Named Participants and the Class, as employees over the age of forty, are far more likely than younger employees to use sick and disability benefits for the treatment of their medical conditions.

65. By reason of the continuous nature of Defendant's discriminatory conduct, which persists through the present, Named Participants and the Class are entitled to application of the continuing violation doctrine to all violations of the THRA.

66. As a result of Defendant's discriminatory conduct, continuing to deny accrued Plan benefits to participants, Named Participants and the Class have suffered and continue to suffer harm, including but not limited to lost wages and earnings and other financial loss, as well as humiliation, embarrassment, emotional distress, and mental anguish.

67. Named Participants and the Class are entitled to all remedies available for violation of the THRA, including, but not limited to those damages provided in Tenn. Code Ann. § 4-21-311.

**PRAYER FOR RELIEF**

**WHEREFORE**, Named Participants request that the Court:

A. Certify this action as a class action under Fed. R. Civ. P. 23, appoint the Named Participants as Class Representatives, and appoint the undersigned as Class counsel.

B. Enjoin Defendant to restore accrued Plan benefits to individual Named Participants and Class Members, after appropriate accounting, or otherwise enforce the terms of the Plan and the applicable collective bargaining agreements.

C.  An award to Named Participants and the Class of damages for lost employment benefits against Defendant as allowed by the THRA;

D.  Award Plaintiffs their reasonable attorneys' fees and costs incurred in this action.

E.  Grant such further, equitable and/or other relief as it may deem appropriate.

DATE: May 31, 2019

Respectfully submitted,

*/s/ Joe P. Leniski, Jr.*
Joe P. Leniski, Jr. (BPR#22891)
Karla M. Campbell (BPR #27132)
BRANSTETTER STRANCH & JENNINGS, PLLC
The Freedom Center
223 Rosa L. Parks Ave., Suite 200
Nashville, Tennessee 37203
(615) 254-8801
joeyl@bsjfirm.com
karlac@bsjfirm.com

*ATTORNEYS FOR PLAINTIFFS*