UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DARRELL PRIDY, GREGORY NABORS, MICHAEL SANDERS, and RANDALL ABSTON, on behalf of themselves and all others similarly situated, </br></br> AND </br></br> LOCAL UNION 702 OF THE UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPEFITTING INDUSTRIES, </br></br> Plaintiffs, </br></br> v. </br></br> PIEDMONT NATURAL GAS COMPANY, INC. </br></br> AND </br></br> DUKE ENERGY CORPORATION, as the alter ego or successor in liability to PIEDMONT NATURAL GAS COMPANY, INC. </br></br> Defendants. | No. 3:19-cv-00468 </br> District Judge Aleta A. Trauger </br></br> CLASS ACTION </br> JURY DEMAND |

## DEFENDANTS' REPLY IN FURTHER SUPPORT OF
## MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

Defendants Piedmont Natural Gas Company, Inc. ("Piedmont Gas") and Duke Energy Corporation ("Duke Energy") (collectively, "Defendants") have moved the Court pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss each of the claims asserted by Plaintiffs Local Union 702 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industries (the "Union") and Darrell Pridy, Gregory Nabors, Michael Sanders, and

1

Randall Abston (collectively, the "Individual Plaintiffs").[1] Defendants respectfully submit this Reply in Further Support of their Motion to Dismiss pursuant to local rule 7.01(a)(4). For the reasons stated below and in Defendants' Memorandum of Law in Support of Motion to Dismiss, Plaintiffs' factual pleadings fail to state any claim upon which relief can be granted.[2]

### A. Duke Energy is Piedmont Gas's corporate parent, not its legal successor.

As the Court confirmed in its Memorandum analyzing Plaintiffs' prior complaint, the corporate relationship "at issue here is an existing relationship between a corporation--Piedmont Gas--and its current owner--Duke Energy … [and] does not accommodate a successor theory of liability." (Dkt. #20 at 14). Plaintiffs' amended pleading does not change this legal reality, and the Court's prior analysis applies equally here.

Plaintiffs plead that Duke Energy and Piedmont Gas "merged," legally becoming a single legal entity, and argue that this "merger" makes Duke Energy Piedmont Gas's successor. (*See* Opposition at 5; 2nd Am. Compl. at ¶¶ 38-40). This argument is flawed because the pled fact upon which it is based -- a merger between the two named defendants -- is incorrect, as confirmed by publically-available records of which the Court can take judicial notice in its analysis of Defendants' pending Rule 12 motion.[3] Duke Energy and Piedmont Gas's publically-available filings with the Securities and Exchange Commission confirm that Duke Energy acquired

---

[1] The Union and the Individual Plaintiffs are periodically referenced together as "Plaintiffs."

[2] Defendants assert that the majority of Plaintiffs' arguments in opposition to Defendants' motion to dismiss are fully rebutted by its initial memorandum of law and do not require further reply. Defendants accordingly stand on their opening brief and supplement those arguments here only to the extent additional briefing may be of assistance to the Court.

[3] While courts generally do not consider matters outside of the pleadings when ruling on a motion to dismiss, they may take judicial notice of, and consider, "matters of public record" without converting a motion to dismiss into a motion for summary judgment. *Wilkins v. Tenn. Dep't of Children's Servs.*, 2018 U.S. Dist. LEXIS 206227, *7 n.5 (M.D. Tenn. Dec. 6, 2018); *see also Jackson v. City of Columbus,* 194 F.3d 737, 745 (6th Cir. 1999), *overruled on other grounds by Swierkiewicz,* 534 U.S. 506 (a court may "consider public records" when ruling on a motion to dismiss); *Nicholson v. City of Clarksville*, 2011 U.S. Dist. LEXIS 115307, *15–16 n.4 (M.D. Tenn. Oct. 5, 2011) ("An EEOC charge is a public record.").

Piedmont Gas in a cash transaction where "Forest Subsidiary, Inc., a wholly-owned direct subsidiary of Duke Energy," was "merged with and into Piedmont, with Piedmont surviving the merger as a wholly-owned direct subsidiary of Duke Energy." (*See* Exhibit 1, Excerpt from Piedmont Natural Gas Company, Inc. Schedule 14A Proxy Statement filed December 14, 2015).[4] It is an objective fact that Piedmont Gas remained a distinct legal entity after its acquisition by Duke Energy, and this reality means that the Court's previous rejection of Plaintiffs' successor liability argument applies equally to the Second Amended Complaint.

In a similar vein, Plaintiffs latch onto the Court's use of the phrase "completely subsumed" in its Memorandum and argue that they can establish a predecessor/successor relationship based on alleged interconnected business practices. (*See* Opposition at 5; Dkt. #20 at 13). Plaintiffs are taking the phrase "completely subsumed" out of context, as *none* of the cases addressed in the Court's extensive analysis stand for the proposition that two legal entities (like a corporate parent and its subsidiary) integrating some of their business practices makes one of them a "predecessor" and the other a "successor." Plaintiffs' approach would make the successor liability and alter ego doctrines indistinguishable, and as the Court noted, they are "separate legal doctrines with distinct legal consequences." (Dkt. #20 at 13) (quoting *In re Welding Fume Prods. Liab. Litig.*, No. 1:03-cv-17000, 2010 WL 2403355 at *8 (N.D. Ohio June 11, 2010)).

**B.     Duke Energy is Piedmont Gas's corporate parent, not its alter ego.**

Analysis of Plaintiffs' pleading under the factors used in the Sixth Circuit confirm that Piedmont Gas and Duke Energy are not "alter egos." These factors, adopted from the National Labor Relations Board, are: "whether the two enterprises have substantially identical management,

---

[4] The full text of Piedmont Natural Gas Company, Inc.'s Schedule 14A Proxy Statement is available at https://www.sec.gov/Archives/edgar/data/78460/000119312515402439/d49546ddefm14a.htm (last visited February 19, 2020).

business, purpose, operation, equipment, customers, supervision and ownership." *Trustees of Detroit Carpenters Fringe Benefit Funds v. Patrie Const. Co.,* 618 F. App'x 246, 252 (6th Cir. 2015) (quoting *NLRB v. Fullerton*, 910 F.2d 331, 336 (6th Cir. 1990)). While no one factor is determinative, Plaintiffs have failed on balance to allege sufficient facts to support a theory of alter ego liability. While Plaintiffs allege Duke Energy and Piedmont Gas share management and ownership, (*See* 2nd Am. Compl. ¶¶ 39-40), Plaintiffs fail to adequately allege that Duke Energy's and Piedmont Gas's respective businesses, purposes, operations, equipment, customers, and supervision are substantially identical such that they should be considered a single entity as a matter of law. (*See* 2nd Am. Compl. ¶¶ 41-43, 47-52).

Plaintiffs acknowledge that, in the labor context, the alter ego doctrine is intended to "prevent employers from evading their obligations under a CBA 'by changing or altering their corporate form.'" (Opposition at 6 (quoting *Trustees of Detroit Carpenters Fringe Benefit Funds. v. Indus. Contracting, LLC*, 581 F.3d 313, 31-18 (6th Cir. 2009)). This acknowledgement wholly undermines Plaintiffs' alter ego arguments at the outset because as Plaintiffs' pleading confirms, Piedmont Gas has neither attempted to "evade" its obligations under the CBA with the Union (the Parties just dispute what those contractual obligations are), nor has it "changed or altered" its corporate form. The only change to Piedmont Gas's corporate form as the result of its acquisition by Duke Energy is that it became a Duke Energy subsidiary by virtue of Duke Energy's acquisition of its stock. *See* Exhibit 1. And that transaction did not result in any "evasion" of obligations under the CBA between Piedmont Gas and the Union. To the contrary, Piedmont Gas and the Union

4

negotiated a new CBA post-acquisition.[5] Piedmont Gas and *only* Piedmont Gas is a signatory to the CBA.

Plaintiffs claim they allege "all of the factors which are classic indicia of an 'alter ego' or 'double-breasted' employer arrangement," (Opposition at 8), but the facts alleged in the Second Amended Complaint support neither a "double-breasting" case (in which an employer maintains one company that is a signatory to a CBA while maintaining a second, non-union company in the same line of work in order to utilize non-union labor) nor a "disguised continuance" case. Rather, and as Plaintiffs' pled facts confirm, Duke Energy is a corporate parent and Piedmont Gas is its subsidiary, and Plaintiffs' legal conclusions to the contrary are not entitled to presumption of truth. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

C.  **The Union has not pled, and cannot plead, a viable excuse for failing to exhaust its contractual remedies.**

Plaintiffs contend the Union is not required to initiate and exhaust the grievance procedure in the CBA because their breach of contract claim is outside of the scope of disputes covered by the CBA's grievance provision. This argument is logically and contractually untenable, and Plaintiffs' reliance on *Carpenters v. Pratt-Farnsworth, Inc.*, 609 F. Supp. 1299, 1301 (E.D. La. 1984) is misplaced. It is well settled that a plaintiff alleging a violation of a CBA must exhaust any contractual dispute resolution remedies as a condition precedent to suing. *See Gipson Mech. Contrs., Inc. v. U.A. Local 572*, 362 F. Supp. 3d 451, 460 (M.D. Tenn. 2019). The Sixth Circuit requires "a clear and positive showing of futility before excusing a failure to exhaust." *Miller v. Chrysler Corporation*, 748 F.2d 323, 326 (6th Cir. 1984).

---

[5] Plaintiffs argue that they pled that Duke Energy was a "bargaining party" during negotiations. (Opposition at 7). What Plaintiffs actually pled was that Piedmont Gas was "represented by officials with both Piedmont Gas and Duke Energy." (*See* 2nd Am. Compl. at ¶ 33). It is axiomatic that the parties to a contract are its signatories. Plaintiffs cannot change the parties to the 2018 CBA simply by alleging that Duke Energy representatives were present during labor negotiations. (*See* 2nd Am. Compl. at ¶ 41).

5

In *Pratt-Farnsworth*, the plaintiff unions asked the employer during labor negotiations to add a contract provision "dealing with disputes concerning related entities of the signatory employer but the employer participants rejected inclusion of such provision in the collective bargaining agreement." *Id.* at 1301 n.1. The CBA at issue there included a grievance provision limited to disputes "involving an alleged claim of a particular provision of this Agreement." *Id.* at 1301. The district court concluded that the plaintiff unions were not required to follow the grievance procedure in the CBA because the "controversy in question was not included in the agreement." *Id.*

The "controversy in question" here is the Union's § 301 claim for breach of contract. The operative 2018 CBA[6] mandates resolution of "disputes between the parties hereto, as to the meaning or interpretation of the terms of this Agreement…." (*See* Art. XII of 2018 CBA at PageID #:164). Well-settled principles of contract and labor law do not allow Plaintiffs to sue for breach of contract and at the same time avoid the applicability of the mandatory grievance process in the contract upon which they are suing. Nothing in *Pratt-Farnsworth* purports to change this.

**D.     The Individual Plaintiffs cannot avoid the grievance process in the CBA by characterizing their claims as "class claims."**

The Individual Plaintiffs additionally argue they should be excused from failing to exhaust their ERISA claims through the CBA's grievance provision because "[w]ere the Named Participants, collectively, to have sought to arbitrate their grievance of their ERISA claims on a class-wide basis, the case law makes it all but certain they would have been barred from doing so." The Individual Plaintiffs did not seek to arbitrate on a classwide basis, but it would not matter even

---

[6] If Plaintiffs are not claiming a breach of the current CBA, but are attempting to claim a breach of a *prior* CBA (the parties' express agreement that all past agreements are cancelled by the current CBA notwithstanding, *see* Preface to 2018 CBA at PageID #: 158), each of those CBAs also included a materially similar grievance provision.

6

if they had. It is well settled that the unavailability of classwide arbitration procedures is not a basis to invalidate an agreement to arbitrate. *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1631 (2018); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2010). The Individual Plaintiffs are contractually obligated to grieve their claims, and the law they cite does not support the argument that asserting their individual claims on class basis permits them to "end run" the mandatory grievance process.

**E. It would be futile for the Individual Plaintiffs to amend in order to assert a claim under T.C.A. § 50-2-103, as any such claim would be preempted by LMRA § 301.**

The Individual Plaintiffs respond to Defendants' argument that the Sick Bank section of the pre-2018 CBAs was a payroll practice and not an ERISA plan by, among other things,[7] requesting leave to amend to add an alternative Tennessee wage claim asserting that they are entitled to their banked hours as "deferred compensation" under T.C.A. § 50-2-103. Amendment to add such a claim would be futile. Tennessee's wage statute defers to company policy or a labor agreement in determining whether "vacation or other compensatory time" is treated as wages. *See* T.C.A. § 50-2-103(a)(4). State law claims that require construing a CBA are preempted by LMRA § 301. *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988). The U.S. District Court for the District of Massachusetts applied these settled principles of § 301 preemption to a similar wage claim under a parallel Massachusetts wage statute, holding that the state wage claim was preempted because application of the state wage claim of necessity required construction of the parties' labor contract. *Mitchell v. Globe Newspaper Co., Inc.*, 602 F. Supp. 2d 258, 261-62

---

[7] The Individual Plaintiffs also assert that Defendants rely on facts outside of the pleadings in its argument that the relevant CBA provision constituted a payroll practice and not an ERISA plan. Defendants stand on their principle brief regarding that argument.

(D. Mass. 2009). That reasoned analysis applies equally here. The Individual Plaintiffs' proposed amendment to add a Tennessee wage claim would be futile.

**F.     The Individual Plaintiffs' age discrimination claim under the THRA will necessarily require interpretation of the CBA, resulting in its preemption by the LMRA.**

Plaintiffs contend their age discrimination claim is not preempted by the LMRA because it "hinges not on any reading or interpretation of the CBA, but rather on the Defendants'[8] conduct and motives in eliminating the Leave Bank." The relevant CBAs between the Union and Piedmont Gas, all of which are incorporated by reference in the Second Amended Complaint, demonstrate that the "elimination of the Leave Bank" was not a unilateral act as Plaintiffs argue. The Leave Bank was a feature of the parties' Sick Leave provision in the 2012 CBA, (*see* Art. XVI of 2012 CBA at PageID #: 151), and it was not a feature of the parties' Sick Leave provision in the parties' subsequent 2018 CBA, (*see* Art. XVI of 2018 CBA at PageID #: 167). The replacement of the Leave Bank with a different sick leave benefit was the product of collective bargaining. The Individual Plaintiffs cannot challenge Defendants' motive for a collectively bargained contractual term without implicating the underlying CBAs and the negotiating process leading up to them.[9] The Individual Plaintiffs' THRA claims are inextricably intertwined with the CBA, resulting in their preemption by LMRA § 301. *See, e.g., Paluda v. ThyssenKrupp Budd Co*., 303 Fed. Appx. 305, 309 (6th Cir. 2008).

---

[8] The THRA prohibits discrimination by an employer, and this Court has previously applied the "instrumentality rule" in analyzing whether a corporate parent is liable for its subsidiary's alleged violation of the THRA. *Davis v. Connecticut Gen. Life Ins. Co.*, 743 F. Supp. 1282, 1283-84 (M.D. Tenn. 1990). For the reasons discussed in Section A, *supra*, the Individual Plaintiffs' age discrimination claim would be only be cognizable against Piedmont Gas, the Individual Plaintiffs' employer, and not Duke Energy.

[9] If there were any evidence whatsoever that the replacement of the Leave Bank with different sick leave benefits in the 2018 was actually discriminatory as the Individual Plaintiffs now allege, their Union would have no doubt refused to agree to the 2018 CBA.

8

## CONCLUSION

Based on the foregoing and the arguments in Defendants' initial brief, all of Plaintiffs' claims should be dismissed.

*s/ Paul S. Davidson*
Paul S. Davidson (TN BPR# 011789)
John E. B. Gerth (TN BPR# 024439)
WALLER LANSDEN DORTCH & DAVIS, LLP
The Nashville City Center
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Phone: 615-244-6380
Email: paul.davidson@wallerlaw.com
Email: jeb.gerth@wallerlaw.com

*Counsel for Defendants Piedmont Natural Gas Company, Inc. and Duke Energy Corporation*

## Certificate of Service

I certify that a true and correct copy of the foregoing was served *via* the Court's CM/ECF system upon:

Joe P. Leniski, Jr.
Karla M. Campbell
BRANSTETTER STRANCH & JENNINGS, PLLC
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203

on February 19, 2020.

*/s/ Paul S. Davidson*
Paul S. Davidson

9